*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Robert TARIN III**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202300140**

_____

Decided: 23 January 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Adam A. King (arraignment/motions/trial)
Corey M. Picton (motions)

Sentence adjudged 12 January 2023 by a special court-martial tried at
Marine Corps Base Camp Butler, Okinawa, Japan, consisting of officer
and enlisted members with military judge sentencing. Sentence in the
Entry of Judgment: reduction to E-1, confinement for five months, and
forfeiture of $1278.00 pay per month for three months.

For Appellant:
*Lieutenant Zoe R. Danielzcyk, JAGC, USN*

For Appellee:
*Lieutenant Commander Paul LaPlante, JAGC, USN*
*Lieutenant Michael A. Tuosto, JAGC, USN*

Judge de GROOT delivered the opinion of the Court, in which Senior Judge DALY and Judge GROSS joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

de GROOT, Judge:

Appellant was convicted, pursuant his pleas, of drunken operation of a vehicle, wrongful appropriation of a vehicle, leaving the scene of a vehicle accident, unlawful entry, and assault consummated by a battery in violation of Articles 111, 113, 121, 129 and 128, Uniform Code of Military Justice [UCMJ].[1] He was also convicted, contrary to his pleas, of assault consummated by a battery, in violation of Article 128, UCMJ.[2] We have jurisdiction to review this case under Article 66(b)(1)(A), UCMJ.

Appellant asserts one assignment of error: that the military judge improperly allowed the Government to make a major change to the contested  charge causing a fatal variance. We find no prejudicial error and affirm.

## I. BACKGROUND

The Government charged Appellant with numerous offenses stemming from an incident on 7 November 2021. That night Appellant became heavily intoxicated and, upon walking back to the barracks, decided to take and drive another Marine's car without her permission. He crashed the car while still on base by driving it into a ditch. Responding to the scene, several Military Police (MPs) saw him run away from the accident into a grouping of trees near the fence line where they lost sight of him. Appellant proceeded to jump over the fence and break into the home of a Japanese civilian, Mr. Yamata, and his

---

[1] 10 U.S.C. §§ 911, 913, 921, 928, 929.  There was no plea agreement in this case.

[2] 10 U.S.C. § 928.

family.[3] He assaulted Mr. Yamata before passing out on the floor. Mr. Yamata called the local Japanese police, who apprehended Appellant and carried him into one of their police cars. Appellant remained lying in the back seat, until the MPs arrived. The MPs notified Appellant that they would be moving him into one of their vehicles. While Appellant's manner appeared differently to each of the witnesses, they mostly agreed that he was speaking in gibberish and talking about a fictitious person named "Elon." Then Appellant, still fairly intoxicated, sat up and informed the MPs standing in front of and near him that he was going to run.[4] Despite Corporal (Cpl) Sierra[5] and others telling him not to run away, as well as several of them putting their hands out to prevent him from leaving, Appellant rocked back and forth, started counting down to run, and moved in a manner that showed he was preparing to exit the car.[6] Having finished his countdown, Appellant got out of the Japanese police car, and as he stood up, he hit Cpl Sierra in the nose resulting in a minor injury to Cpl Sierra.[7] Appellant then attempted to flee, but the nearby MPs stopped him, placed him on the ground, and handcuffed him.[8]

Appellant pleaded guilty to all of the charges and specifications stemming from his activities that night, except one, relating to the injury to Cpl Sierra. For this offense, the Government charged Appellant with violation of Article 128, UCMJ, for assault upon a person in the execution of law enforcement:

> In that Lance Corporal Robert Tarin, U.S. Marine Corps, on active duty, did at our near Okinawa, Japan, on or about 7 November 2021, assault Military Police Office Corporal [Sierra], U.S. Marine Corps, who then then [sic] known by the accused to be a person having and in the execution of military law enforcement

---

[3] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[4] R. at 594.

[5] Cpl Sierra was a Lance Corporal (LCpl) at the time of the incident; however, at trial, he was a Cpl. Therefore, he will be referred to by his grade at the time of the trial.

[6] R. at 613.

[7] Pros. Ex. 7.

[8] R. at 571.

duties, by unlawfully committing bodily harm to Corporal [Sierra], with force of violence, to wit: by striking Corporal [Sierra] in the face with the accused's hand.[9]

During trial, the testimony from the witnesses varied. The victim, Cpl Sierra stated he thought Appellant hit him on his face with his fist.[10] Another witness, LCpl Whiskey, stated Appellant's head contacted the victim.[11] A third witness claimed she did not see anyone hit the victim.[12] Another testified that Appellant's arm hit Cpl Sierra,[13] and Appellant, in his videotaped interrogation, stated he believed he hit an MP's face with his hand.[14]

The Defense filed a motion for a finding of not guilty, pursuant to Rule for Courts-Martial (R.C.M.) 917, arguing that the Government failed to present evidence of Appellant's intent to commit bodily harm, or that he acted with culpable negligence, as he stood up and "accidentally struck Cpl [Sierra] in the face."[15] The military judge denied the motion. When later discussing instructions, the Government requested a variance instruction – excepting "hand" for another part of Appellant's body, for example, the "upper body" – to which the Defense objected. However, the military judge, in addition to instructing on the lesser included offense of assault consummated by a battery, provided the standard variance instruction regarding exceptions and substitutions over objection. At Defense request, the military judge also gave the instruction for the defense of accident.

Appellant was ultimately found guilty of the lesser included offense of assault consummated by a battery, excepting the word "hand" and the words "and was then known by the Accused to be a person having and in the execution of military law enforcement duties" and, substituting the words "upper body."[16]

---

[9] Charge Sheet.

[10] R. at 614.

[11] R. at 571.

[12] R. at 699.

[13] R. at 595.

[14] Pros. Ex. 7.

[15] R. at 771.

[16] R. at 918.

## II. DISCUSSION

### A. Law

As the Defense objected to the Government's proposed exceptions and substitutions member instruction as a fatal variance, it is a question of law reviewed de novo.[17] In this case, having reviewed the record and the pleadings of the parties, we determine the variance was neither material nor prejudicial to Appellant.

"A variance between pleading and proof exists when evidence at trial established the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge."[18] R.C.M. 918(a)(1) states "[g]eneral findings as to a specification may be: . . . (C) guilty with exceptions, with or without substitution, not guilty of the exceptions, but guilty of the substitutions, if any." Further, "[e]xceptions and substitutions may not be used to substantially change the nature of the offense or to increase the seriousness of the offense or the maximum punishment for it."[19] In order to prevail on a fatal variance claim, an appellant must show that the variance was material and that he was substantially prejudiced.[20] A variance prejudices an accused when it "(1) put[s] him at risk of another prosecution for the same conduct, (2) mislead[s] him to the extent that he has been inadequately able to prepare for trial, or (3) den[ies] him the ability to defend against the charge."[21]

---

[17] *United States v. Treat,* 73 M.J. 331, 336 (C.A.A.F. 2014) (citing *United States v. Finch*, 64 M.J. 118, 121 (C.A.A.F. 2006)). When defense counsel does not object at trial, we review the rulings on findings by exceptions and substitutions for plain error. *Id. See also United States v. Useche*, 70 M.J. 657, 661 (N-M. Ct. Crim. App. 2012).

[18] *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003) (citing *United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999)).

[19] R.C.M. 918(a)(1).

[20] *United States v. Taylor*, 82 M.J. 614(N-M. Ct. Crim. App. 2022), (citing *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F. 2009)). A variance is material if it "substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense." *Treat*, 73 M.J. at 336 (quoting *Marshall*, 67 M.J. at 420). *See also Allen*, 50 M.J. at 86 (citing *United States v. Hunt*, 37 M.J. 344, 347 (C.M.A. 1993)).

[21] *United States v. Edmonds*, 81 M.J. 559, 563 (N-M. Ct. Crim. App. 2021) (citing *Treat*, 73 M.J. at 336 (citing *Marshall*, 67 M.J. at 420 (quoting *Teffeau*, 58 M.J. at 67)) (internal quotation marks omitted).

The courts have examined what constitutes a material variance and whether or not, if a variance is material, an appellant was prejudiced. In *United States v. Treat*, the Government specifically charged the appellant with missing movement by "miss[ing] the movement of Flight TA4B702 with which he was required in the course of duty to move," but was unable to find a witness who remembered the number of the flight the appellant missed.[22] The Court of Appeals for the Armed Forces (C.A.A.F.) found that the Government specifically chose "missing the flight" itself as the "gravamen" of the offense of missing movement and an "integral part of an element of the offense."[23] Therefore, the military judge's broader substitution of the unit's movement was a material variance.[24] The C.A.A.F. went on to determine that while there was a material variance, there was no prejudice to the appellant as the defense theory that he had been kidnapped would not have changed despite the exception and substitution by the military judge.[25]

In *United States v. Lee*, the Court of Military Appeals (C.M.A.) found, within the context of a charged violation of a general order, excepting "marijuana in the hashish form" and substituting "marijuana in the form of three growing marijuana plants" was not a fatal variance.[26] The C.M.A. stated the record made it clear that the defense was aware of the various forms of marijuana that "were contemplated by the charge," as the defense made a motion to suppress any substance "other than that specifically stated in the matters charged."[27] This showed the C.M.A. that, although the defense did not prevail on its motion, the defense was not "misled nor otherwise unable to adequately prepare for trial."[28]

---

[22] 73 M.J. at 333-36. It should be noted that this case was reviewed under a plain error standard as counsel did not object to the variance at trial.

[23] *Id.* at 336.

[24] *Id.*

[25] *Id.*

[26] 23 C.M.A. 384, 50 C.M.R. 161 (C.M.A. 1975).

[27] *Id.* at 385, 50 C.M.R. at 162 (internal quotations omitted).

[28] *Id.* at 386, 50 C.M.R. at 163. The court reasoned that the form of the marijuana was "not essential to constitute the offense and might be entirely omitted without affecting the charge against accused, it was mere surplusage and could be disregarded" and therefore there was no prejudice even if there was a variance. *Id. (*citing *Matthew v. United States,* 15 F.2d 139 (8th Cir. 1926)); *see also Berger v. United States*, 295 U.S. 78 (1935); *United States v Craig*, 8 C.M.A. 218, 24 C.M.R. 28 (1957).

In *United States v. Reese*, the C.A.A.F. found that it was a major change under R.C.M. 603 to change the means of committing the crime from the appellant "licking" the penis of the child victim to "touching" the child victim's penis with his hand.[29] The defense argued, and the C.A.A.F. agreed, that this change in the means of committing the offense was "not fairly included in the original specification."[30] The C.A.A.F. stated, "[w]hile changing the means by which a crime is accomplished may constitute a slight error under the appropriate circumstances," it was not so in *Reese*. The defense could have made an argument that the touch was accidental, while there is no such defense to the offense as originally charged.[31]

In *United States v. Dailey*, the government charged the appellant with "intentionally inflicting grievous bodily harm by inflicting deep cuts on the victim's head."[32] The military judge, as the fact finder, found the appellant guilty by excepting "deep cuts" and substituting "long term blurred vision" based on the victim's testimony.[33] The defense counsel claimed in a post-trial submission that he was "misled by the pleading and was unable to properly prepare for trial."[34] The defense counsel argued that, if he had known of this potential variance, he would have interviewed the victim's ophthalmologist or looked specifically at the victim's medical records regarding his vision.[35] The staff judge advocate presented an affidavit from the trial counsel that the defense had received the victim's medical records in response to discovery and had the opportunity to interview the victim.[36] This Court's predecessor found the variance did not affect the appellant's preparation for trial based on the defense theory.[37] The appellant pleaded guilty to the lesser included offense of "means likely to cause grievous bodily harm," and his theory was that he never used a pipe.[38] The defense failed to provide evidence that the victim did not suffer

---

[29] 76 M.J. 297, 299 (C.A.A.F. 2017).

[30] *Id.* at 300.

[31] *Id.* at 301.

[32] 37 M.J. 1078, 1079 (N.M.C.M.R. 1993).

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 1080.

[38] *Id.*

grievous bodily harm and did not contest the cuts, stitches or blurred vision evidence offered by the Government.[39] The *Dailey* Court concluded "that even if the appellant was misled under these circumstances, he has failed to show how he was unable to prepare for trial based on his theory of defense."[40]

Recently, and unlike in *Dailey,* this Court in *United States v. Edmonds* found a change in the charged date range to include a date over a year earlier was a material variance and prejudicial to the appellant's trial preparation and presentation, which was rendered "effectively a nullity" as a result of the variance.[41] This Court focused on the appellant's main strategy that the incident occurred a year prior to the charged dates, to include the appellant being a witness in support of this argument. This Court found "[t]he overall effect of the variance was to unfairly 'pull the rug out' from under Appellant."[42]

**B. Analysis**

*1. Variance is not material*

In this case, the gravamen of assault consummated by a battery is whether or not Appellant caused bodily harm to the victim. The majority of the testimony presented, in conjunction with the injury to the victim, is evidence that Appellant committed bodily harm to Cpl Sierra unlawfully and with force or violence. Unlike the charge in *Treat*, the exception of "hand" and substitution of "upper body" of Appellant did not change the nature of the offense he was found guilty of committing, neither did the substitution of the body part with which Appellant struck Cpl Sierra change the possibility of a defense, as it did

---

[39] *Id.*

[40] *Id.*

[41] 81 M.J. 559, 563 (N-M. Ct. Crim. App. 2021). The military judge found that there was no material variance in approving a change that extended the charging window from "on or about October 2015 and on or about November 2015" to July 2014. *Id.* at 562-63. He further found there was no prejudice to the appellant as he was on notice, had not been misled and was able to the prepare for trial. *Id.* at 567.

[42] *Id.* at 569.

in *Reese.* Lastly, it did not increase the seriousness or the punishment of the offense. This is not a material variance.

### 2. No prejudice to Appellant

As we find this is not a material variance, we do not need to determine if Appellant was prejudiced. However, even if we had found it was a material variance, we would find Appellant was not prejudiced.

Appellant argues, "the variance misled [Appellant] to the extent he could not adequately prepare for trial and changed the nature of the offense, denying Appellant a proper defense against the charge."[43] Appellant was aware before trial that numerous witnesses, based on where they were standing, saw the contact between Appellant and Cpl Sierra, including Appellant himself. Their testimony only differed on which part of Appellant's body struck the victim as Appellant exited the backseat of the car. Defense counsel's strategy was consistent in both the opening statement and closing argument that, while the bodily harm did happen, (1) the Government could not prove that it was specifically Appellant's hand that struck Cpl Sierra, (2) Appellant was not culpably negligent in committing the bodily harm, (3) the contact was an accident, and (4) that Appellant was unaware that Cpl Sierra was in the execution of his duties.[44] The variance did not change the viability of the arguments Defense presented at trial.

Lastly, this variance does not put Appellant at risk for another prosecution for assaulting Cpl Sierra. Witness testimony of the assault, as well as evidence of the date, time, and location of the assault would prevent a second prosecution of Appellant for the assault of Cpl Sierra.[45]

---

[43] Appellant's Brief at 19.

[44] The Government was not successful in proving beyond a reasonable doubt that Appellant was aware of that Cpl Sierra was military police and in the execution of his duties.

[45] *See United States v. Hopf,* 1 C.M.A. 584, 5 C.M.R. 12 (1952).

### III. Conclusion

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[46]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[46] Articles 59 & 66, UCMJ.